FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 07, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

SCOTT R.,[1]

     Plaintiff,

  v.

FRANK BISIGNANO,
Commissioner of Social Security,[2]

     Defendant.

No. 2:24-cv-05158-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND PARTIALLY REMANDING FOR PAYMENT OF BENEFITS AND PARTIALLY REMANDING FOR FURTHER PROCEEDINGS**

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted as the defendant.

Due to seronegative rheumatoid arthritis, Reiter's syndrome, epididymis, post-traumatic stress disorder (PTSD), major depressive disorder, and fibromyalgia, Plaintiff Scott R. claims he is unable to work fulltime and applied for social-security benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed whether Plaintiff met or equaled the listings, improperly assessed Plaintiff's subjective claims, improperly evaluated the medical opinions, and erred at step five as a result of her prior errors. As is explained below, the ALJ erred. This matter is remanded for payment of benefits from July 18, 2024, onward; and remanded for further proceedings as to the period from April 18, 2022, through July 17, 2024.

## I.    Background

In May 2022, Plaintiff filed an application for benefits under Title 2, claiming disability beginning April 18, 2022, based on the physical

and mental impairments noted above.[3] Plaintiff's claim was denied at the initial and reconsideration levels.[4]

After the agency denied Plaintiff benefits, ALJ Marie Palachuk held a telephone hearing in July 2024, at which Plaintiff, a vocational expert, and 2 medical experts testified.[5]

Plaintiff testified that he officially retired in July 2022 but last worked on April 18, 2022.[6] He was on leave for three months while a medical separation for retirement was processed.[7] He had started receiving accommodations in 2017.[8] He was driven to local sites, where he guided someone else to do the work because he could not drive, hold a screwdriver, or climb a ladder.[9] It is difficult to write or do fine motor

---

[3] AR 259, 297.

[4] AR 127, 133.

[5] AR 52-98.

[6] AR 75.

[7] AR 76.

[8] *Id.*

[9] AR 76-77.

skills and even writing for more than a minute will cause visible swelling in his hands with redness.[10] Plaintiff went to occupational therapy at the VA and was given prosthetic utensils to be able to eat.[11]

Plaintiff said he wears braces on his hands with plastic inserts to stop his hands from becoming permanently contracted.[12] He cannot close his hand fully nor open it fully.[13] Plaintiff used to ride a mountain bike and use an industrial sewing machine but can't anymore.[14] He said that he can lift only light items and that he gets dizzy and it is hard to walk because of the risk of falling.[15] He said that in addition to the dizziness he will get swelling and numbness in his legs and feet, and that this started when he was going through a bunker in Iraq.[16] In

---

[10] AR 77-78.

[11] AR 78.

[12] AR 79.

[13] AR 80.

[14] *Id.*

[15] AR 81.

[16] *Id.*

2022, he was able to walk better but still had balance issues.[17] He had been using 2 wrist canes and was recently prescribed a walker.[18] When he goes to the VA, he uses the canes or holds on to someone.[19]

Plaintiff testified that he had gone through physical and occupational therapy and said his wife and mother were medical providers in those areas who worked with this as well.[20] He said that the walker allowed him to maneuver with his forearms instead of hands.[21] Plaintiff said that he had his father or babysitters help care for his son because he is three and it is not safe for him to watch his son alone because of his conditions and that he lives next to his parents so they are there to help daily.[22]

---

[17] AR 82.

[18] *Id.*

[19] AR 82-83.

[20] AR 83.

[21] AR 84.

[22] *Id.*

Plaintiff said his wife likes to travel but he has difficulty traveling and will usually stay home when she travels for work or to see her parents.[23] When he travels with her, it is by plane and with her driving them in a rental car.[24] On a typical day, he has to lie down and elevate his feet throughout the day and that on bad days he cannot get out of bed until his father comes to help him up.[25] He has a hard time mentally with confrontation due to his PTSD and has difficulty sleeping due to nightmares and panic attacks.[26] He does not like driving or traveling because they trigger his PTSD.[27]

He has bad days and cannot go out 4 to 5 days a week.[28] When he does go out, he usually is taken out by his father and stays out for one

---

[23] AR 85.

[24] AR 85-86.

[25] AR 86.

[26] AR 86-87.

[27] AR 87.

[28] AR 88.

hour.[29] He has mood swings and is triggered easily.[30] He made a suicide attempt several months before.[31] Plaintiff said before he received workplace accommodations, as his job had required being able to lift 40 pounds, climb ladders, use hands tools, and do computer work, all tasks that he could not perform.[32] He loved the job and stayed as long as he could but even with the accommodations he could not continue.[33] Plus, now, he is also unable to concentrate as he would have needed.[34]

After the hearing, the ALJ issued a decision denying benefits.[35] The ALJ found Plaintiff's alleged symptoms were not entirely

---

[29] *Id.*

[30] AR 89.

[31] AR 89-90.

[32] AR 90.

[33] *Id.*

[34] AR 91.

[35] AR 15-45. Per 20 C.F.R. §§ 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

consistent with the medical evidence and the other evidence.[36] As to medical opinions: the ALJ found:

- The opinions of medical expert Harvey Cohen, MD, to be persuasive

- The opinions of medical expert Ricard Buitrago, PhD, to be very persuasive.

- The August 2022 opinions of state agency evaluator Gordon Hale, MD, that Plaintiff meets Listing 14.09 to be not persuasive.

- The February 2023 opinions of Gordon Hale, MD, and the opinions of state agency evaluators Michael Brown[37]; John W, PhD; and Ruth C., MD, to be persuasive.

- The opinions of consultative examiner David Oni, PMHNP, to be somewhat persuasive.

---

[36] AR 26-34.

[37] No degree for Mr. Brown is noted but the specialty of psychology is indicated.

- The opinions of treating providers Linda Wolcott, PhD; Serenity Kelton, PA-C; Karl Kuzis, MD; and Cong-Qui Chu, MD, to be not persuasive.

- The opinions of reviewing physician Peter Lee, MD, to be not persuasive.[38]

The ALJ also considered the third-party statements of Plaintiff's parents and wife and found them not consistent with the medical record.[39] As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through March 31, 2028.

- Step one: Plaintiff had not engaged in substantial gainful activity since April 18, 2022, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: seronegative rheumatoid arthritis, Reiter's syndrome, post-traumatic stress disorder (PTSD),

---

[38] AR 26-36.

[39] AR 25.

and major depressive disorder.  She also stated that she considered Plaintiff's fibromyalgia.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and considered 14.09, 12.04, and 12.15.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

> [Plaintiff] can only stand and/or walk for 1 to 2 hours at a time, so he would need the ability to alternate between sitting and standing every 60 minutes. He can occasionally perform postural activities, but he cannot climb ladders, ropes, or scaffolds. He can frequently handle and finger, but not constantly. He should avoid concentrated exposure to hazards and all exposure to extreme temperatures. He is able to have occasional interaction with the public, coworkers, and supervisors.

- Step four: Plaintiff was not capable of performing past relevant work as an electronics technician.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as

marker (DOT 209.587-034), garment sorter (DOT 222.687-014), and a mail clerk (DOT 209.687-026).[40]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[41]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[42] and such error impacted the nondisability determination.[43] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

_____

[40] AR 20-38.

[41] AR 1-6, ECF No. 1.

[42] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g);

[43] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[44]

## III.   Analysis

Plaintiff initially argued the ALJ erred in her evaluation of Listings 14.09 and Listing 1.18; erred by not properly evaluating Plaintiff's testimony; and erred by not properly assessing the medical opinions.[45] The Commissioner argues that the ALJ properly evaluated Listings 14.09, 12.04, and 12.15, properly evaluated Plaintiff's

---

[44] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[45] ECF No. 9.

testimony and properly considered the medical opinions.[46]  As is explained below, the ALJ's analysis contains consequential error, and the case should be remanded for an award of benefits from October 10, 2022.

## A.    Step Three: Plaintiff established consequential error.

Plaintiff contends the ALJ failed to provide substantial evidence to support the finding that Plaintiff did not meet Listing 1.15. The Court agrees.

### 1.    Standard

The Listings set forth by the Commissioner "define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'[47]  At step three of the sequential evaluation, Plaintiff bears the burden of demonstrating that her impairment meets or equals a Listing.[48]

---

[46] ECF No. 14.

[47] *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted)

[48] *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)

1    If a claimant meets all of the listing criteria, he is considered

2    disabled at step-three. A claimant who does not meet the listing

3    criteria may still be considered disabled at step-three if his

4    impairment(s) medically equal a listed impairment.[49] Medical

5    equivalence can be established three ways, one of which is:

6    
> If an individual has an impairment that is described in the
> listings, but either:
>
>   a. the individual does not exhibit one or more of the
>      findings specified in the particular listing, or
>   b. the individual exhibits all of the findings, but one or
>      more of the findings is not as severe as specified in the
>      particular listing,
>
> then we will find that his or her impairment is medically
> equivalent to that listing if there are other findings related
> to the impairment that are at least of equal medical
> significance to the required criteria.[50]

The ALJ is obligated to consider the relevant evidence to

determine whether a claimant's impairments meet or equal one of the

---

[49] Soc. Sec. Ruling 17-2p. *See also Sullivan*, 493 U.S. at 530 (requiring

a claimant to show that the impairment meets (or medically equals) all

of the specified medical criteria, not just some of the criteria).

[50] *Id.*

specified impairments set forth in the listings.[51] Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a listing]."[52]

Listing 14.09 provides:

**1.15 *Inflammatory arthritis.*** As described in 14.00D6. With:

1. One or more major peripheral joints in a lower extremity (see 14.00C8) and medical documentation of at least *one* of the following:

   a. A documented medical need (see 14.00C6) for a walker, bilateral canes, or bilateral crutches (see 1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or

   b. An inability to use *one* upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 14.00C7), and a documented medical need (see 14.00C6) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the

---

[51] *Lewis v. Apfel,* 236 F.3d 503, 512 (9th Cir.2001); 20 C.F.R. § 416.920(a)(4)(iii).

[52] *Lewis,* 236 F.3d at 512; *see also Marcia v. Sullivan,* 900 F.2d 172, 176 (9th Cir.1990) (noting that the ALJ's unexplained finding at step three was reversible error).

other upper extremity or a wheeled and seated
mobility device involving the use of one hand
(see 1.00C6e(ii)); or

2. One or more major peripheral joints in each upper
extremity (see 14.00C8) and medical documentation of an
inability to use *both* upper extremities to the extent that
neither can be used to independently initiate, sustain, and
complete work-related activities involving fine and gross
movements (see 14.00C7).

### 2.     The ALJ's consideration of Listing 14.09

The ALJ articulated her consideration of Listing 14.09 as follows:

The severity of the claimant's inflammatory arthritis and
Reiter's syndrome does not meet or medically equal the
criteria of listing 14.09. Specifically, the criteria in 14.09(A)
are not satisfied because the claimant can ambulate
effectively and is able to perform fine and gross movements
effectively. The criteria in 14.09(B) is not satisfied because
no organs or body systems have a moderate level of severity.
The criteria in 14.09(C) are not satisfied because the
claimant does not have dorsolumbar or cervical ankylosis.
The criteria in 14.09(D) are not satisfied because the
claimant does not have a marked limitation in at least one
of the three areas.[53]

### 3.     Relevant Medical Evidence

On March 25, 2024, Plaintiff presented to his primary medical

source, Karl Kuzis, MD.  Dr. Kuzis noted:

---

[53] AR 21-22.

He continues to have daily difficulty with small and large muscle fatigue. This is worsened over time and along with his hand contractures he now has difficulty with ambulating for more than about 5 minutes. He continues to work with rheumatology but has not really found any medications that have helped him during this time. He continues to carry the label of seronegative rheumatoid arthritis although the initial onset of his symptoms during active duty time while in Iraq are very suggestive of toxic exposure, in particular a nerve agent would be high on the list of possible culprits.[54]

On the same day, Dr. Kuzis completed a medical source statement limiting Plaintiff to less than a range of sedentary work.[55] He stated:

Condition started acutely when on deployment in Iraq and began after clearing weapon bunkers. While not link has been proven, the onset is very suspicious for nerve agent exposure. Given the well documented acute onset and the progression over time, while the label of seronegative RA has been assigned the possibility of progressive nerve damage due to toxic exposure appears as likely. No known treatment with expectation of continued progression.[56]

Four months later, at a follow-up appointment, Dr. Kuzis wrote a letter/prescription note that Plaintiff would benefit from a walker due

---

[54] AR 2387.

[55] AR 2675-2677.

[56] AR 2677.

to health issues.[57]  The Court notes that Dr. Kuzis' letter was consistent with a prescription note to be provided to the VA for issuance of a medical device.

    4.   <u>Analysis</u>

    The ALJ's articulated reasoning regarding Listing 14.09 is not supported by substantial evidence.  The ALJ did not appear to understand the nature of the letter/prescription note written by Dr. Kuzis.  She articulated the following regarding her consideration of the prescription note:

> Despite the claimant's reported activities, a July 2024 letter from the claimant's Dr. Karl Kuzis, MD, PhD, indicated that the claimant could benefit from the use of a walker. To the extent the foregoing is considered opinion evidence, it is not persuasive. There is no support from the diagnostic examination findings to suggest a need for a walker, and the record evidence is inconsistent with such a requirement.[58]

    While it is within the discretion of the ALJ to assess the opinion evidence in the record, it a different matter for an ALJ to question the

---

[57] AR 2682.

[58] AR 34.

prescriptions and treatment recommendations of a medical source. This is particularly true in an instance such as the present in which no other medical source has issued any question as to the reasonableness of the prescribed course of treatment.

Dr. Cohen, the medical expert who testified, stated that he considered only the orthopedic/musculoskeletal impairments and did not consider the rheumatologic conditions, and that a rheumatologist should be consulted regarding those impairments.[59] Because Dr. Kuzis prescribed a walker not for an orthopedic/musculoskeletal condition but a rheumatologic condition, Dr. Cohen's testimony cannot be considered when evaluating Dr. Kuzis' prescription. The ALJ offered no conflicting opinion or evidence that would indicate that Dr. Kuzis' prescription for a walker was not a reasonable medical decision.  No medical source questioned Dr. Kuzis' prescription or treatment plan

---

[59] AR 60.

and the ALJ was not qualified to do so based solely on her own non-expert opinions.[60]

The Court concludes that had the ALJ properly considered the prescription note written by Dr. Kuzis on July 18, 2024, she would have found Plaintiff to meet or equal Listing 14.09 as of that date. Accordingly, the Court finds that remand is warranted for an award of benefits from July 18, 2024, the date on which it was determined by Plaintiff's medical sources that he required the use of a walker to ambulate effectively.

---

[60] *See, e.g., Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); *Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings"); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (recognizing that as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms").

**B.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred by failing to properly consider the supportability and consistency of the medical opinions of medical experts Dr. Cohen and Dr. Buitrago; treating sources, Dr. Kuzis, Dr. Wolcott, Dr. Chu, and PA-C Kelton; and reviewing source Dr. Lee. The Commissioner argues the ALJ reasonably articulated her reasoning adequately and gave an adequate explanation of why she found the opinions of the treating sources to be unpersuasive and the opinions of the medical experts to be persuasive.

Because the Court has remanded this case for payment of benefits from July 18, 2024, it will only briefly address this issue. As previously noted, the medical expert, Dr. Cohen stated that he considered only orthopedic/musculoskeletal impairments when rendering his opinions and said that the rheumatologic conditions were "an issue for a rheumatologist."[61]

---

[61] AR 60.

Because the ALJ found Plaintiff's primary impairments to be seronegative rheumatoid arthritis and Reiter's syndrome, the record should be developed by either obtaining a consultative examination[62] or scheduling an expert in rheumatology to testify as a medical expert.

**C.  Symptom Reports:  This issue is moot.**

Plaintiff argues that the ALJ failed to provide valid reasons for discounting his subjective complaints.  Because the Court has remanded the case with direction that the ALJ re-evaluate the medical opinions and Plaintiff's impairments, the ALJ will be required to re-evaluate Plaintiff's symptom reports.  This issue is therefore moot.

**D.  Step Five:  Plaintiff established consequential error.**

Plaintiff argues the ALJ's step five finding was flawed due to errors in considering the medical opinion evidence and in evaluating

---

[62] Should the ALJ schedule a consultative examination, the Court directs that the examiner be provided with copies of medical records regarding Plaintiff's seronegative rheumatoid arthritis and Reiter's syndrome, including Dr. Kuzis' Medical Source Statement of March 25, 2024.

Plaintiff's subjective complaints.  Because Plaintiff established

consequential error in considering the medical opinion evidence, he has

established error at step five.

## E.    Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted.

The decision whether to remand a case for additional evidence, or

simply to award benefits, is within the discretion of the court."[63] When

the court reverses an ALJ's decision for error, the court "ordinarily

must remand to the agency for further proceedings."[64]

The Court finds that further development is necessary for a

proper disability determination for the period prior to July 18, 2024.

---

[63] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[64] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595  ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1
2

Here, it is not clear what, if any, additional limitations are to be added to the RFC.

3

### IV.   Conclusion

4
5

Remand for further administrative proceedings is the usual course when a harmful error occurs in the administrative proceeding, except in rare circumstances.[65] This is a rare circumstance where a partial award of benefits is appropriate.

6
7
8

9

First, the ALJ failed to provide legally sufficient reasons for failing to credit and consider Dr. Kuzis' prescription for a walker as of July 18, 2024.

10
11
12

13

Second, further administrative proceedings will offer no benefit as to the period after July 18, 2024—the record is fully developed.[66] "Allowing the Commissioner to decide the issue again would create an

14
15
16
17
18

19

[65] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

20
21
22

[66] *See id.*

23

unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."[67]

An award of benefits is warranted from July 18, 2024. The period prior to that date, requires additional development of the record to make an informed decision.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for a calculation of benefits pursuant to sentence four of 42 U.S.C. § 405(g) from July 18, 2024 to present.

2.    This matter is **REMANDED** to the Commissioner of Social Security for further development of the record as to the period from April 18, 2022 through July 17, 2024.

3.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 14**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

---

[67] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

1    IT IS SO ORDERED. The Clerk's Office is directed to file this

2  order and provide copies to all counsel.

3    DATED this 7th day of August, 2025.

4

5    _____

6    EDWARD F. SHEA
    Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23